# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 19, 2019            Decided June 19, 2020

No. 18-7140

D&S CONSULTING, INC., (DSCI), A NEW JERSEY
CORPORATION,
APPELLANT

v.

KINGDOM OF SAUDI ARABIA, HIS EXCELLENCY ADEL BIN
AHMED AL-JUBEIR, MINISTER OF FOREIGN AFFAIRS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00787)

———

*Richard S. Sternberg* argued the cause for appellant. With
him on the brief was *D. Cory Bilton*.

*Alexandra E. Chopin* argued the cause for appellee. With
her on the brief was *Mitchell R. Berger*.

Before: SRINIVASAN, *Chief Judge*, TATEL, *Circuit Judge*,
and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*:  D&S Consulting, Inc., (DSCI) entered into an agreement to perform services for the Kingdom of Saudi Arabia.  The contract provided that the Board of Grievances, a Saudi Arabian administrative court, "shall be assigned for settlement of any disputes" arising out of the contract.  DSCI later filed an action against the Kingdom in D.C. Superior Court.  The Kingdom removed the case to federal district court and filed a motion to dismiss the complaint on the grounds of *forum non conveniens*, pointing to the forum-selection clause in the parties' contract.

The district court granted the Kingdom's motion, holding that the contract's forum-selection clause is mandatory and that the dispute thus belonged before the Board of Grievances.  We agree and affirm.

I.

In February 2013, DSCI, a New Jersey corporation, submitted a bid to the Kingdom of Saudi Arabia to perform as the prime contractor on certain wireless communication projects for the Saudi Ministry of the Interior.  DSCI won the government contract, and the parties executed their agreement in Riyadh.  The parties agreed that performance would occur in Saudi Arabia, the contract would be governed by Saudi law, all books and records would be kept in Arabic in Saudi Arabia, and payment would be made in Saudi riyals.

This case concerns the contract's forum-selection clause, which states in relevant part:

> "The grievance council shall be assigned for settlement of any disputes or claims arising from the execution of this cont[r]act, or related to this contract, or resulting from its dissolution."

*D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 322 F. Supp. 3d 45, 48 (D.D.C. 2018). The "grievance council" is the Board of Grievances, an administrative court in Saudi Arabia. The Board has jurisdiction over government contract claims brought against the Kingdom.

Notwithstanding the contract's forum-selection clause, DSCI now seeks to bring contract-related claims against the Kingdom in the United States. In 2015, during the contract's performance period, DSCI became insolvent and surrendered control of its assets to its secured creditor. According to DSCI, in the process of resolving its outstanding debts and receivables, it identified two uncollected invoices totaling $2,108,404.69 for work completed under the contract and submitted them to the Kingdom for payment. After the Kingdom refused to pay, DSCI filed a complaint in the Superior Court of the District of Columbia alleging breach of contract and unjust enrichment.

The Kingdom removed the case to the United States District Court for the District of Columbia. The Kingdom then filed a motion to dismiss the complaint on grounds of *forum non conveniens*, arguing that the forum-selection clause required the parties to bring any contract-related claims before the Board of Grievances in Saudi Arabia. The district court granted the Kingdom's motion to dismiss the complaint, *see id.* at 52, and DSCI now appeals.

II.

As the Supreme Court has instructed, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court for*

*W. Dist. of Texas*, 571 U.S. 49, 60 (2013). In particular, "if the plaintiff has entered into a contract to litigate his claims in a specific forum, the defendant may enforce that agreement by moving to dismiss for *forum non conveniens*." *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019).

A "valid forum-selection clause" is "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (internal citation omitted). Accordingly, if a "forum-selection clause is applicable, mandatory, valid, and enforceable, the court must almost always grant [a] motion to dismiss" on *forum non conveniens* grounds. *Azima*, 926 F.3d at 874.

In this case, there is no dispute that the forum-selection clause is applicable, valid, and enforceable. With regard to applicability, the clause covers "any disputes or claims . . . related to this contract, or resulting from its dissolution," *D&S Cons., Inc.*, 322 F. Supp. 3d at 48, and the claims brought by DSCI fall squarely within that language: the claims are for breach of contract and unjust enrichment concerning unpaid invoices for work performed under the contract. DSCI thus makes no argument that the matter in dispute lies outside the forum-selection clause's substantive reach. Nor has DSCI disputed the clause's validity or enforceability. *See id.* at 50 ("In opposing the motion to dismiss, DSCI does not contend that the forum-selection clause is invalid or unenforceable.").

Rather, the sole issue is whether the forum-selection clause is "mandatory." *Azima*, 926 F.3d at 874. In the case of a mandatory clause, a court will enforce the clause except in the "most unusual or rare" instance in which the public interest requires "disrupting the parties' settled expectations as reflected in the forum-selection clause." *Id.* at 875–76 (formatting modified and internal citation omitted); *see Atl.*

*Marine*, 571 U.S. at 63–64.  But if a forum-selection clause is "permissive" rather than mandatory, a district court performs the standard *forum non conveniens* analysis, under which "the defendant must show that the case can and should proceed" in a jurisdiction other than where the plaintiff brought it.  *Azima*, 926 F.3d at 874–75.  We review de novo whether a forum-selection clause is mandatory and then review for abuse of discretion a district court's ultimate decision to grant or deny a motion to dismiss for *forum non conveniens*.  *See id.* at 876.

A forum-selection clause is "mandatory" if it "requires that litigation proceed in a specific forum," and is "permissive" if it "permits litigation to occur in a specified forum but does not bar litigation elsewhere."  *Id.* at 874.  With a permissive forum-selection clause, the parties waive their right to contest jurisdiction in the specified forum should any covered disputes be brought there, establishing at least one agreed-upon place to bring a claim.  If a clause is mandatory, by contrast, the specified forum marks the *only* place to bring a covered claim.  Whether a clause is mandatory or permissive is a matter of basic contract interpretation.  *See Phillips v. Audio Active Ltd.,* 494 F.3d 378, 386 (2d Cir. 2007).

Here, the forum-selection clause states in pertinent part: "The grievance council shall be assigned for settlement of any disputes or claims arising from the execution of this cont[r]act, or related to this contract, or resulting from its dissolution."  *D&S Cons., Inc.*, 322 F. Supp. 3d at 48.  That clause is mandatory, requiring that any dispute be brought before the "grievance council," i.e., the Board of Grievances in Saudi Arabia.  The clause does more than merely give the Board jurisdiction if a party were to opt to bring a dispute there for resolution.  Rather, it says that either party *must* bring any covered claim before the Board.

We have interpreted closely similar language to establish a mandatory forum rather than merely a permissible one.  In *Marra v. Papandreou*, we determined that a forum-selection clause stating that "any dispute[s] . . . *shall be settled* by the Greek courts" was mandatory rather than permissive.  216 F.3d 1119, 1120–21, 1124 (D.C. Cir. 2000) (emphasis added).  Here, we similarly construe similar operative language:  "shall be assigned for settlement."  By agreeing that they "shall" assign the "settlement" of any covered claim to the Board of Grievances, the parties agreed to resolve any covered claims before the Board, to the exclusion of any other forum.

In resisting that conclusion, DSCI notes that the forum-selection clause does not contain language expressly excluding other fora.  No magic words, though, are required to establish a mandatory clause.  To be sure, one way to make a clause mandatory is to specifically refer to the designated forum as "exclusive" of other fora.  *E.g., Azima*, 926 F.3d at 876 ("the Parties submit to the exclusive jurisdiction of the courts of England and Wales").  But the parties can also make clear in other ways that the specified forum is exclusive.  For instance, the forum-selection clause we considered in *Marra* simply stated that any disputes "shall be settled by the Greek courts." 216 F.3d at 1121.

DSCI raises a number of concerns about the adequacy of the Board of Grievances as a forum for resolution of its claims against the Kingdom.  DSCI contends, for instance, that Saudi Arabia is an unsafe place to travel, that the judicial system there is neither transparent nor independent, and that the system discriminates against foreign parties and follows deficient substantive and procedural rules.  But in the case of mandatory forum-selection clause, "we need not ask whether the location it identifies is available, adequate, or best for the parties' private interests." *Azima*, 926 F.3d at 875.  Rather, the parties

"have already told us that it meets these criteria" by "agreeing to litigate there," and "we can assume that they selected" a forum "adequate to litigate their claims and to protect their private interests." *Id.*; *see Atl. Marine*, 571 U.S. at 64. Indeed, while DSCI asserts safety and fairness concerns about litigating its dispute in Saudi Arabia, DSCI traveled there to execute a contract with the Kingdom under which it would perform work there over a period of several years.

Because "private-interest factors weigh entirely in favor of the preselected forum" in the case of a mandatory forum-selection clause, a court "may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64.; *see Azima*, 926 F.3d at 875. Those public-interest factors include considerations like administrative convenience, judicial economy, a forum's familiarity with applicable law, and its interest in hearing the case. *See Atl. Marine*, 571 U.S. at 63 n.6; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981); *Azima*, 926 F.3d at 875. And the public-interest factors will suffice to overcome the parties' agreement to bring their claims in the designated forum only in "unusual cases." *Atl. Marine*, 571 U.S. at 64; *Azima*, 926 F.3d at 875.

This is not such a case. DSCI bore "the burden of showing that public-interest factors overwhelmingly disfavor a transfer" to the agreed-upon forum. *Atl. Marine*, 571 U.S. at 67. DSCI, though, has made no effort to carry that burden, failing to put forward any argument that public-interest considerations weigh against enforcing the forum-selection clause in its contract with the Kingdom. That is unsurprising, as the Board of Grievances seemingly would have a significant interest in hearing a dispute about a contract performed in Saudi Arabia, and the Board presumably is better equipped than a United States court to apply Saudi law, as is required by the contract's choice-of-law provision. The district court thus acted well

within its discretion in enforcing the parties' agreement to settle their dispute before the Board.

\* \* \* \* \*

For the foregoing reasons, we affirm the judgment of the district court dismissing DSCI's complaint on the grounds of *forum non conveniens*.

*So ordered.*